IN THE SUPERIOR COURT OF GUAM

JEFFREY J. CONWAY,

         **Plaintiff,**

    vs.

GABRIELLE TAITANO CONWAY, n.k.a,
GABRIELLE JOY CLARK,

         **Defendant.**

**DOMESTIC CASE NO. DM0648-08**

CLERK OF COURT

BY:_____

**FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

## INTRODUCTION

This matter came before the HONORABLE VERNON P. PEREZ on July 12 and 15, 2013 for an Evidentiary Hearing on Defendant's Motion to Modify Child Custody. Plaintiff Jeffrey J. Conway was present with counsel, Joaquin C. Arriola, Jr.; Defendant Gabrielle Joy Clark was present with counsel, Jeffrey Cook. After having heard the Parties' arguments, considering the Parties' pleadings and the record, the Court now issues the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Any finding of fact is also a conclusion of law. Any conclusion of law is also a finding of fact.

2. Plaintiff and Defendant (collectively "the parties") have two children, Ariel and Joshua Conway.

3. The parties were married on May 27, 2006, separated in March 2007, and divorced on November 19, 2008.

4. An integrated Marital and Property Settlement Agreement was executed and incorporated in the Interlocutory and Final Decree of Divorce. The agreement provided that the Plaintiff was to have primary physical custody of the children, and the Defendant was to have alternating weekend visitations.

5. When the parties separated, Defendant believed it was best for the children to be in primary physical custody of Plaintiff because Defendant did not have a residence where the

*Conway v. Conway*
Findings of Fact and Conclusions of Law
Domestic Case No. DM0648-08      - Page 1 of 10 -

children could live long term, and because her work hours made it difficult to care for the children. Plaintiff had a family home where the children could continue to live. Plaintiff had a better family support system to help him care for the children than the Defendant had.

6. In August of 2009, Defendant relocated to New Mexico for employment opportunities, and thereafter moved to Alaska in 2011.

7. During her time in the mainland, Defendant has maintained contact with the children, by phone or internet, and through her family on Guam, including the children's maternal grandmother.

8. Defendant now works for the Department of Defense in Alaska.

9. Defendant is now married to Matthew Clark, a member of the United States Air Force. Together, they reside in a three-bedroom house on Joint Base Elmendorf-Richardson, Anchorage, Alaska.

10. When Defendant left Ariel and Joshua in Plaintiff's primary care in 2007, Plaintiff had no other dependants.

11. Plaintiff is now married to Shereena Conway, and they have two children, Jordan and Bailey. Shereena also has another child, Eijszha.

12. Plaintiff is employed full-time at Atkins Kroll. Shereena is a full-time mom.

13. Plaintiff's home is a two-bedroom house in Yona, Guam. Plaintiff, Shereena, Bailey, and Jordan all sleep in one room. Ariel and Joshua share the other room. When Eijszha is at Plaintiff and Shereena's house, there are two adults and five children living there. Plaintiff plans to build an extension to make his house larger for his expanding family, but does not have the financial ability to do so at this time.

14. Plaintiff drives a Nissan Sentra. When Plaintiff, Shereena, and all the kids are present in the car, the kids are seated at the rear along with an infant seat for the newborn.

15. Ariel is in the seventh grade and attends Inarajan Middle School. Joshua is in the third grade and attends M.U. Lujan elementary school. Both children have performed satisfactorily in academics thus far.

16.     Custody studies were conducted by a social worker in Alaska, and Child Protective Services Guam.  A Guardian Ad Litem Report was also admitted by the parties, and considered by the Court.

## CONCLUSIONS OF LAW

The Court has jurisdiction pursuant to 19 GCA § 8404.  Title 19 GCA § 8404 governs child custody in divorce cases.  Under § 8404(f), the Court may modify a custody arrangement whenever "the best interests of the child require or justify such modification."  19 GCA § 8404(f).  In rendering this decision, the Court is mindful of the legislative preference for preservation of the family life by including both parents in the lives of their children.  This legislative policy is set forth more succinctly in 19 GCA § 8404(h) which provides in pertinent part:

> It is legislative policy that children spend as much time with each of their parents as possible, when the parents are not living together.  Therefore, in determining visitation of minor children on Guam with non-custodial parents living on Guam, the court shall, to the greatest degree possible, order visitation for minor children . . . with non-custodial parents such that he children spend more or less equal amounts of time with the custodial parent and the non-custodial parent during non-working, non-sleeping, non-school time . . .

19 GCA § 8404 (h).  Guam case law, however, has clearly explained that this legislative preference for both legal and joint physical custody arrangement is "always secondary to the best interests of the child." *Howerton v. Howerton*, 2004 Guam 8, ¶ 14; (quoting *Flores v. Cruz*, 1998 Guam 30, ¶ 12).  In *Howerton v. Howerton*, 2004 Guam 8 ¶ 20, the Guam Supreme Court went further in holding that when joint physical custody is awarded, the preference for equal time is also secondary to the best interests of the child.  The Court set forth that in determining the allotment of custody as it relates to the child's best interest, lower courts should look to the factors set forth in 19 GCA ¶ 8404(h) for guidance, as well as cases from other jurisdictions. *Id.* at ¶¶ 23 and 24.   The Court went on to set forth that the following factors, found in section 8404(h), were to be considered for a finding regarding the child's best interest: "the child's

welfare, the parents' willingness to accept visitation, the parents' fitness, the child's schooling, the parents' jobs and the child's extra curricular activities." *Id.* at ¶ 25.

Having considered the statute and legislative policies set forth in Title 19 GCA ¶ 8404, as well as relevant case law, the Court finds that it is in the best interests of the children to modify the current custody order such that the children are in the primary custody of Defendant, their mother. On the one hand, the Court acknowledges that the children are established on Guam, where they have developed extensive ties with family and friends. Surely, the Court is also aware of the unique characteristics that the island-family life has to offer. On the other hand, the Court would be remiss to not consider all of the other factors before it in making its determination as to the best interests of the children.

The Court is convinced that case law from other jurisdictions lend strong support to its findings. In *Bingham v. Bingham*, 12 So.3d. 448 (La. Ct. App., 2009) the court addressed the issue of whether the trial court erred in denying a mother's request to relocate with the minor children from Louisiana to Wyoming. The mother argued that the trial court erred in evaluating the twelve factors enumerated in in La. Rev. Stat. 9:355.12, as they applied to the case. The Court found no error in the trial court's determination that the mother's proposed relocation was not in the minor children's best interest. *Id.* at 451-452. The court pointed to the trial court's finding that the area of Louisiana where the minor children lived was a "cocoon of love and protection with grandparents and wider family living close, which cannot be duplicated in Wyoming." *Id.* at 417. The Court also cited to the trial court's finding that the children are happy, healthy and doing exceptionally well in school. *Id.* at 451-452. The court found that the trial court repeatedly focused on the best interest of the minor children and concluded that they would fare better, and continue to excel, if the request for relocation was denied. *Id.* at 452.

The *Bingham* case is highly relevant to the present case. "The parent seeking relocation has a two-part burden: (1) that the proposed relocation is made in good faith; and (2) that the proposed relocation is in the best interests of the child[ren]." *Id.* at 450. In determining the best interests of the children, the court in *Bingham* considered certain factors. "Although the statute mandates that all of the factors set forth be considered in making a proposed relocation of a

child, it does not require a court to give preferential consideration to any certain factor or factors. *Id.* at 451.

The first factor is "[t]he nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child's life." La. R.S. 9:355.12(1) . Since the parties' divorce was finalized in 2008, Plaintiff has had primary custody of the children. The Guardian Ad Litem report indicates that Defendant's contact with the children, while they are with Plaintiff, is very limited. GAL Report pg. 10. If the children desire to speak with their mother, Plaintiff directs them to ask Shereena to utilize her laptop, which has discouraged them from communicating with Defendant. *Id.* The Court notes that while the minor children have expressed their desire to have more contact and spend more time with their mother, they are unwilling to state a preference for which parent to reside with. *Id* at. 3. The Court does not consider this factor, alone, to be necessarily dispositive.

The second factor is "[t]he age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, education, and emotional development, taking into consideration any special needs of the child." La. R.S. 9:355.12(2). Joshua is in the third grade and attends M.U. Lujan elementary school. The Guardian Ad Litem Report indicates that Joshua appears clean and well groomed when he goes to school. GAL Report pg. 6. Further, there are no problems with his attendance. *Id.* Plaintiff has submitted copies of past academic and service awards received by both Joshua and Plaintiff. Pl's. Ex. 3 and 4. The Court, however, is concerned with the GAL Report's indication of Joshua's missed assignments and his tendency to repeat unsatisfactory behavior. GAL Report pg. 6. Additionally, the report indicates that Plaintiff and Shereena are not *actively* engaged in Joshua's school life as, in the past, they have been unresponsive to notes and conference requests by Joshua's teachers. Defendant intends to enroll Joshua into an elementary school on base. *Id.* at 7.

Ariel is in the seventh grade and attends Inarajan Middle School. The GAL Report indicates that she is obedient and excels academically. *Id.* at 6. The Report further indicates that Plaintiff and Shereena are also not *actively* engaged in Ariel's school life. *Id.* At Ariel's current

age, she is at the onset of puberty. Plaintiff does not speak to Ariel about puberty and what to expect as she gets older. *Id.* at 9. He believes that Shereena should speak to Ariel about these topics; however, Ariel only feels comfortable confiding in and discussing these matters with her grandmother. *Id.* Defendant believes that she needs to be in Ariel's life to get her through the next few years of adolescence. *Id.* The Court agrees. The Court is confident that, Defendant, through her own experiences, possesses the necessary tools to assist Ariel with her transition into adolescence.

The GAL Report also indicates that neither child participates in school clubs, associations, or other extracurricular activities. *Id.* Defendant intends to enroll the children into a youth services program on base and intends for them to participate in extracurricular activities. *Id.* at 7. The Report notes that Defendant's husband is currently a big brother to an 8-year-old through the Big Brothers, Big Sisters organization. The Court believes it is in the best interests of the children that they participate in extra-curricular activities.

The third factor is "[t]he feasibility of preserving a good relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties." La. R.S. 9:355.12(3). Defendant's declaration states that Plaintiff has access to airline buddy passes, which could be utilized to send the children to visit Defendant. Def's. Dec. ¶ 13. Defendant, however, states that Plaintiff has refused to assist her in that regard. *Id.* If the children were to relocate, they will be considered military dependents because Defendant's husband is active duty in the military. *Id.* ¶ 17. To that end, Defendant has indicated her willingness to ensure that the children see their father every summer. *Id.* ¶ 10. Considering the logistics and financial circumstances of the parties, Defendant appears to be in a better position to preserve a good relationship with the children and Plaintiff via visitation arrangements.

The fifth[1] factor is "[w]hether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the

---

[1] The Fourth factor is "the child's preference, taking into consideration the age and maturity of the child." La. R.S. 9:355.12(4). As previously indicated, while the minor children have expressed their desire to have more contact and

nonrelocating party." La. R.S. 9:355.12(5). The Court is not aware of any established pattern of conduct per se on the part of the Defendant. The Court, however, does acknowledge the intentions of Defendant to promote the children's relationship with Plaintiff through visitation arrangements. Def's Dec. ¶ 10.

The sixth factor is "[w]hether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity." La. R.S. 9:355.12(6). The Court is convinced that the relocation will enhance the general quality of life for Defendant but, more importantly, for the children. The educational and recreational opportunities in Alaska appear plentiful. Moreover, while the Court does not doubt the opportunities here on island, the Court is mindful of the employment circumstances of the respective parties' and the amount of time each party can devote to the education and recreational development of the child. The Court believes Defendant is in a better position to further the children's needs in this regard.

The seventh factor is "[t]he reasons of each parent for seeking or opposing the relocation." La. R.S. 9:355.12(7). Among the several reasons cited by Defendant, of great concern to the Court are the circumstances surrounding Plaintiff's past failures to pay the utility bills, which have resulted in the disconnection of the home electricity on several occasions; the current living situation whereby the entire family of six, and sometimes seven people, share a two-bedroom, one bathroom home; and lastly the mode of family transportation, in which all of the children are somehow seated at the rear of the vehicle along with one infant seat. Plaintiff's opposition is based primarily on the children being born and raised on Guam, thriving in the island-family life, which is significantly different from the unfamiliar lifestyle in Alaska. As previously mentioned, the Court is well aware of the unique island-family lifestyle, especially when compared to that of Alaska. However, the Court cannot confidently say that the best interests of the children are served by allowing this factor to trump the other factors that lend toward Defendant being in a better position to provide for the children's best interests.

---

spend more time with their mother, they are unwilling to state a preference for which parent to reside with. Therefore, the Court will not revisit the Fourth factor in its analysis.

The eighth factor is "[t]he current employment and economic circumstances of each parent and whether or not the proposed relocation is necessary to improve the circumstances of the parent seeking relocation of the child[ren]." La. R.S. 9:355.12(8). Defendant is employed full-time as a Federal Civilian with her Air Force Reserve Unit as a Medical Administrative Assistant. Together, the adjusted gross income of Defendant and her husband was $74,711.00 in year 2012. Def's Ex. B, pg. 5. Plaintiff is a full-time service advisor for Atkins Kroll, Inc. He works on commission and his total earnings from January to April 15, 2013 were $11,485.98. Pl's. Ex. 5, pg. 8. Plaintiff stated that because he works on commission, his monthly income varies. *Id.* Plaintiff further stated that he averages about $2,600 per month. *Id.* Plaintiff's wife, Shereena, is a stay at home mother who was previously employed with IT&E for five years as a customer service representative. Upon reviewing the employment and economic circumstances of the parties, the Court believes that Defendant is in a better position, financially, to provide for the children.

The remaining factors involve the extent to which the objecting parent has fulfilled his or her financial obligations to the parent seeking relocation; the feasibility of a relocation by the objecting parent; any history of substance abuse or violence by either parent; and any other factors affecting the best interests of the child[ren]. La. R.S. 9:355.12(9)-(12). The remaining factors are of limited applicability to the Court's finding of facts. The Court believes that the factors already addressed are sufficiently dispositive of this case. On that basis, the Court need not analyze the remaining factors in depth.

## CONCLUSION

The Court finds that both Defendant and Plaintiff are fit and loving parents. At this point, however, a change in Ariel and Joshua's life would not hurt them in any way and instead might assist in their educational and emotional development. Ariel is young woman who will require privacy and Defendant is in a better position to provide for that privacy. Further, Ariel needs the nurturing of a mother figure with whom she can confide in. There have been concerns raised regarding Joshua's behavior issues. The Court believes that Defendant is in a better position to address these issues so that they do not develop into worse behavioral problems in the future.

For all of the above-reasons, the Court believes that Defendant has met its burden in that (1) the proposed relocation is made in good faith; and (2) that the proposed relocation is in the best interests of the child[ren]." *Bingham* at 450.

The Court orders that Defendant and Plaintiff have joint legal custody of Ariel and Joshua. Defendant will have physical custody of Ariel and Joshua for the school year **2014-2015**[2], and each school year thereafter until modified by the Court. Plaintiff shall have physical custody of Ariel and Joshua from one week after school ends until one week before school is to start. The parties will work together to provide transportation for the children to and from Guam at the least expensive method available to them, including military flights, airline buddy passes, and any other available methods to reduce the costs. If there are any costs involved in the transportation of the children for this custodial arrangement, it will be shared between the parties. When the children are with Plaintiff in Guam, Defendant with the assistance of her spouse will provide whatever documents are necessary to provide whatever benefits the children are entitled to as military dependents.

Both parties shall provide at all times addresses and telephone numbers to contact the other party. The parties shall also provide educational and medical information regarding the children. The parties shall conduct themselves at all times in such a manner as to insulate the children from any friction between the parties, to avoid alienation of the children's affection for each parent, and to consider each other in arranging visitation or contact. The parties shall exercise, in good faith, his or her best efforts to encourage and foster the maximum relations of love and affection between the children and their mother and father. No parent shall in any way impede, obstruct or interfere with the exercise by the other, of their right of companionship with the minor children, and neither of them at any time shall in any manner disparage or criticize the other parent, nor allow any other individual to do so in the presence of the minor children. When the children are not with one parent, that parent with whom the children are not, shall have open, reasonable rights of telephonic, internet or other electronic communication with the children

---

[2] The Court heard this case prior to school year 2013-2014. Because the children are currently in the middle of the school year, the Court believes it would not be in their best interests to move at this time. A move prior to the school year 2014-2015 will provide the parties with sufficient time to make the necessary preparations.

including Skype, taking into account the differences in time zones and the school and other activities of the children.

So **ORDERED** this ___ day of December, 2013.

2nd

_____
HONORABLE VERNON P. PEREZ
JUDGE, SUPERIOR COURT OF GUAM

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam.

DEC 0 2 2013

De.